UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: Salem | : |
| | : |
| MOUSSY SALEM, | :  No. 3:24-mc-003 (VDO) |
| *Applicant*. | : |
| | : |
| FREDDY SALEM | : |
| *Intervenor*. | : |

## RULING ON MOTION TO QUASH

Applicant Moussy Salem commenced this proceeding in January 2024 by filing an *ex parte* motion to take discovery pursuant to 28 U.S.C. § 1782 for use in an underlying litigation in England. ECF 1. After confirming that the respondent UBS AG had accepted service of the subpoena, the Court granted the § 1782 application based in part on Moussy's representation that the English Court was receptive to the discovery sought (*see* ECF 1) and on the assumption that Moussy would provide notice of the Subpoena to the other parties in the English Litigation. ECF 16. However, Freddy Salem – another party to the English Litigation – then filed a motion to intervene alleging that the English Court had expressly determined that this discovery was not relevant and that Moussy had failed to provide proper notice of the UBS Subpoena to opposing parties. ECF 17. The Court granted the motion to intervene, stayed enforcement of the UBS Subpoena, and set a deadline for Freddy to file a motion to quash. ECF 20. Pending before the Court are Freddy's Motion to Quash, ECF 32, and Motion to Strike documents submitted by Moussy after briefing was closed, ECF 40.

**A. Ruling on Motion to Strike, ECF 40**

The post-briefing documents submitted by Moussy are copies of filings and a hearing transcript from a nearly identical § 1782 proceeding before Judge Cronan in the Southern District of New York. *See* ECF 39. Just like this proceeding, the SDNY proceeding concerned a § 1782

application by Moussy Salem to serve a substantially similar subpoena on a bank in the United States for information concerning foreign businesses that allegedly was for use in the English Litigation.  *See In re Salem*, No. 24-mc-005 (JPC), 2024 WL 3026670 (S.D.N.Y. June 17, 2024). The SDNY proceedings were also procedurally similar: Judge Cronan initially granted Moussy's § 1782 application *ex parte* but then permitted Freddy to file a motion to quash after learning that Moussy had failed to provide notice of the SDNY subpoena to other parties in the English Litigation.  Given the similarities, the Court has taken judicial notice of the hearing transcript from the SDNY proceeding (filed here at ECF 39-1) and of Judge Cronan's decision denying Freddy's motion to quash (filed here at ECF 44-1), and Freddy's motion to strike is DENIED as to those documents.  However, the Court has not considered Moussy's brief and affidavit from the SDNY proceeding (filed here at ECF 39-2, 39-3), so Freddy's motion to strike is GRANTED as to those documents, and the Court will only address arguments raised in this proceeding.

### B. Ruling on Motion to Quash, ECF 32

Turning to the motion to quash, the Court adopts – and assumes familiarity with – Judge Cronan's thorough explanation of the history of the underlying English Litigation, his statement of the applicable law, and his well-reasoned application of the *Intel* factors, with the one exception discussed below.  *See In re Salem*, No. 24-mc-005 (JPC), 2024 WL 3026670 (S.D.N.Y. June 17, 2024).  Building on that foundation, the following is a summary explanation of this Court's reasoning.

#### 1. The discovery is generally "for use" in the English Litigation

The Court concludes that the discovery requested in the UBS Subpoena (ECF 1-2) is "for use" in the English litigation as required by § 1782, except for document requests 9 and 11 as discussed below.  The statutory text of § 1782 requires that the discovery be "for use in a

proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).  "The term 'for use' is afforded a 'broad interpretation,' and the 'sought-after evidence need not be admissible or even discoverable under the rules of the foreign jurisdiction.'" *In re Salem*, No. 24-mc-005 (JPC), 2024 WL 3026670 at *11 (quoting *Deposit Ins. Agency v. Leontiev*, No. 17-mc-414 (GBD)(SN), 2018 WL 3536083, at *3 (S.D.N.Y. July 23, 2018)).

Freddy asserts that the English Court deemed the discovery irrelevant and so argues it cannot be for use in the English Litigation.  However, the Court concurs with Judge Cronan's observation that while "a sweeping and unambiguous pronouncement by the English Court that the specific discovery sought here is wholly irrelevant to the English Proceedings" would undermine Moussy's assertion that the documents are for use there, the English Court never made such a pronouncement.  *Id.* at *13.  The English Court did deny a handful of specific discovery requests under Proposed Issue 9, but it did not rule that all discovery into the African Businesses is irrelevant – rather, the English Court "appeared to recognize the relevance of discovery related to the African Businesses' trading activity." *Id.* at *12 (citing examples from discovery hearing in English Court).  Consequently, Freddy has failed to demonstrate that the discovery is not for use in the English Litigation.

### 2. The discovery is not an attempt to circumvent restrictions

The Court also concludes that the § 1782 application is not an attempt to circumvent proof-gathering restrictions or related policies.  In *Intel Corp. v. Advanced Micro Devices*, the Supreme Court identified four discretionary factors to assist district courts in deciding § 1782 applications, including "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" and whether the request is "unduly intrusive or burdensome."  542 U.S. 241, 264-65 (2004).  Here

3

again, Freddy argues that the English Court has precluded the discovery sought, such that the UBS Subpoena is an attempt to circumvent that restriction.  However, as Judge Cronan noted, the Second Circuit has emphasized that § 1782 contains no foreign-discoverability requirement, and discoverability in the underlying proceeding/tribunal is but one of many considerations and should not be afforded "undue weight."  *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015).  "[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."  *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995).  The Court agrees with Judge Cronan that because the English Court did not definitively deny access to the very discovery sought here, Freddy's circumvention argument fails at the outset.  *In re Salem*, 2024 WL 3026670 at *14 (citing *In re Chevron Corp.*, 633 F.3d 153, 163 (3d Cir. 2011) (absent definitive determination that foreign court denied access to same documents, the party opposing discovery failed to carry its burden of proving circumvention under *Intel*)).

Relatedly, Freddy alleges in a footnote that Moussy's § 1782 application violates his agreement in a 2016 settlement not to bring any legal proceedings against Freddy in connection with historical claims relating to the African Businesses.  ECF 32 at 4 n.1.  This argument is too thinly developed to permit a fair assessment, so the Court will not address it any further.

### 3. Whether Moussy may use the discovery for purposes other than the English Litigation

Next, the Court concludes that the existence of other potential uses for the requested discovery beyond the underlying English litigation is not grounds for denial under § 1782.  "[A]ncillary benefits that may accrue to a Section 1782 petitioner do not weigh against a meritorious application."  *In re Salem*, 2024 WL 3026670 at *14 (quoting *In re Tel. Media Grp. Ltd.*, No. 23-mc-215 (JGLC), 2023 WL 5770115, at *11 (S.D.N.Y. Sept. 6, 2023), and collecting

other examples). Nonetheless, the Court will order pursuant to the stipulation by Moussy's counsel at oral argument that Moussy may use the § 1782 discovery solely for purposes of the English Litigation. As for Freddy's concern that a remedy for violation of this limitation would prove elusive – i.e., that Moussy lacks sufficient incentive to comply with the use restriction – the Court notes that Moussy's attorneys are answerable to this Court pursuant to their pro hac vice admission and therefore should diligently ensure that their representations and stipulation to this Court are not rendered false.

### 4. Lack of notice did not prejudice Freddy

The Court also declines to quash the subpoena based on Moussy's noncompliance with the Rule 45(a)(4) requirement to serve notice on each other party before serving a document subpoena on a third party. Although Moussy erred by not providing advance notice of the UBS Subpoena to the parties to the English Litigation, *see In re Hornbeam Corp.*, No. 14-mc-424, 2015 WL 13647606, at *5 (S.D.N.Y. Sept. 17, 2015) (applying Rule 45(a)(4) notice requirement to § 1782 subpoena), Freddy intervened and obtained a stay before UBS served any compliance, so there has been no prejudice.

### 5. Requests 9 and 11

Notwithstanding the foregoing, although the Court is satisfied that the information requested in the UBS Subpoena generally meets the requirements of § 1782, there are two exceptions: Document Request 9 (*"All documents concerning actual or attempted payments and/or the transfer of monies to/from any of the African Businesses, including but not limited to monies that You received and/or sent as a correspondent or intermediary bank."*), and Document Request 11 (*"All statements for any accounts of the African Businesses, whether held individually or jointly with another individual or entity."*). ECF 1-2 at 16. There are 77 entities

in the list of African Businesses, so these requests are drastically more expansive than requests for transfers to/from specific entities, such as in Document Requests 1-8.  Moussy has not explained which of the 77 African Businesses are believed to have accounts with UBS or otherwise utilizes UBS's banking services, nor is there any temporal limitation on these requests, nor has Moussy adequately explained how such sweeping information could all be for use in the English Litigation.  Moussy's theory of relevance pertains to damages: he contends that the value of the Parker Services must be calculated based on the cost incurred to provide those services, which he asserts "is contingent on the scope of the African Businesses' operations and expenditures."  ECF 2 at 7.  In other words, Moussy argues that he needs to discover and quantify the full operations and expenditures of every one of 77 entities in order to understand what the umbrella management company was owed for its management and logistics services.  That theory is too attenuated, the scope too unlimited, and the present record too undeveloped to justify such a leap.  Stated in terms of the legal standard, the Court is not persuaded at this juncture that such extraordinarily broad discovery satisfies the "for use" provision of § 1782, and it also runs afoul of the "unduly intrusive or burdensome" factor under *Intel*. [1]

### C.  Order

For all the foregoing reasons, the Motion to Quash (ECF 32) and the Motion to Strike (ECF 40) are GRANTED IN PART AND DENIED IN PART.

Document Requests 9 and 11 are hereby quashed without prejudice to renewal if Moussy can better articulate what he expects to find, the basis of that expectation, how he might

---

[1] Even though Freddy cannot claim undue burden because he is not the respondent, his standing to contest issuance of the subpoena under § 1782 as the party against whom the requested information will be used includes "standing to object to the subpoena as overbroad."  *See In re Tel. Media Grp. Ltd.*, No. 23-mc-215 (JGLC), 2023 WL 5770115, at *4 and *11 (S.D.N.Y. Sept. 6, 2023).

potentially use that information in his prosecution of the English Litigation, and how the requests have been tailored to those needs.

The Court will not quash Document Requests 1-8 and 10.  Upon receipt of UBS's responses and production, Moussy shall provide copies to the other parties in the English Litigation.  In accordance with the oral stipulation of his counsel and pursuant to this Order, Moussy may use documents produced by UBS solely for purposes of the English Litigation and shall not use or disclose the documents for any other purpose.

The stay of the subpoena is lifted consistent with this ruling.  Moussy Salem shall provide a copy of the ruling to counsel for respondent UBS.

This is not a recommended ruling.  This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2.  As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED, this 1st day of July, 2024, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge